**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| AR DESIGN INNOVATIONS LLC, | Civil Action No. 2:25-cv-00299 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| TARGET CORPORATION, | |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff AR Design Innovations LLC ("AR Design" or "Plaintiff") files this complaint against Defendant Target Corporation ("Defendant" or "Target") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patent (the "Asserted Patent") issued by the United States Patent and Trademark Office ("USPTO"), a copy of which is attached hereto as **Exhibit A**:

| U.S. Patent No. | Title | Available At |
|---|---|---|
| 7,277,572 | Three-Dimensional Interior Design System | https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7277572 |

2.      AR Design seeks injunctive relief and monetary damages.

**PARTIES**

3.      AR Design Innovations LLC is a limited liability company organized under the laws of the State of Texas, with a place of business at 815 Brazos Street, Suite 500, Austin, Texas 78701-2509 (Travis County).

4.     Upon information and belief based upon public information, Target is a corporation organized under the laws of the State of Minnesota.

5.     Upon information and belief based upon public information, Target has its principal place of business at 1000 Nicollet Mall, Minneapolis, Minnesota 55403.

6.     Upon information and belief based upon public information, Target may be served through its registered agent for service, C T Corporation System, which is located at 1999 Bryan Street., Suite 900, Dallas, Texas 75201.

7.     Upon information and belief, Target sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

8.     This arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

11.     On information and belief, Target is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein, including its registration to do business in Texas, which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and,

thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, affiliates, and/or consumers.

12.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offer its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

13.     For example, Target is registered to do business in Texas. *See* TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/ at Filing No. 3735406 (showing Target Corporation is registered in Texas as a foreign for-profit corporation) (last visited Mar. 11, 2025).  Target maintains a significant business presence in Texas by employing residents in about 157 branch locations where consumers may purchase and pick-up merchandise, including locations in Collin, Cooke, Delta, Denton, Fannin, Grayson, Hopkins, and Lamar counties. *See*, *e.g.*, Target Stores in Texas, TARGET, https://www.target.com/store-locator/store-directory/texas (last visited Mar. 11, 2025); *see also* **Exhibit B**, Target Texas Locations; Number of Target stores in the United States in 2025, SCRAPEHERO, https://www.scrapehero.com/location-reports/Target-USA/ ((last visited Mar. 11, 2025).

14.     Upon information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations of, and has employees that work from and out of, facilities

at locations in this District, including, but not limited to, facilities at the following address: (1) 120 W Parker Rd, Plano, TX 75075; (2) 2200 Dallas Pkwy, Plano, TX 75093; (3) 1801 S Loop 288 Denton, TX 76205. *See*, *e.g.*, Target Stores in Texas, TARGET, https://www.target.com/store-locator/store-directory/texas (last visited Mar. 11, 2025).

15.     Defendant is engaging in activities, including but not limited to transacting business in this District and purposefully directing its business activities, including the installation, maintenance, and use of infringing products and other related technologies in this District, and the sale or offer for sale of services and goods in this District to aid, abet, or contribute to the infringement of third parties in this District.

16.     Defendant commits acts of infringement in this District, including, but not limited to, selling, offering for sale, and/or using (including through testing) the Accused Products.

17.     Defendant commits acts of induced infringement in this District, including, but not limited to inducement of infringement by its parents, subsidiaries, partners, affiliates, and end-users to use the Accused Products.

18.     Defendant commits acts of contributory infringement in this District, including, but not limited to contributing to infringement by its parents, subsidiaries, partners, affiliates, and end-users through its use of the Accused Products.

19.     Such a corporate and commercial presence by Target furthers the development, design, manufacture, importation, distribution, and sale of Defendant's infringing products in Texas, including in this District. Through utilization of its business segments and the direction and control of its subsidiaries and affiliates, Target has committed acts of direct and/or indirect patent infringement within Texas, this District, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over

Target would not offend traditional notions of fair play and substantial justice.

20.    On information and belief, Target also purposefully places infringing product in Texas and this District. For example, Target provides its mobile application products and services, e.g., the "Target App," for download and use in Texas. *See* Target App, TARGET, https://www.target.com/c/target-app/-/N-4th2r (listing available Target mobile applications on both AppStore and Google Play) (last visited Mar. 11, 2025). Target's apps are available via digital distribution platforms operated by Apple Inc. and Google. *Id.* As explained in more detail below, the Target App has one or more infringing augmented reality ("AR") products and tools, including but not limited to the Live Augmented Reality tool and the "3D model" tool.

21.    Based on Target's connections and relationship with its distributors, resellers, contractors, dealers, installers, local and U.S. based national retailers, and digital distribution platforms, Target knows that Texas is a termination point of the established distribution channel for the sale and/or use of Target mobile apps to consumers in Texas. Target, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc*., 2009 WL 1025467, at (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

22.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As alleged herein, Target has committed acts of infringement in this District. As further alleged herein, Target, via its own operations and employees located there, has a regular and established place of business, in this District. *See* Exhibit B.  Accordingly, Target may be sued in this district under 28 U.S.C. § 1400(b).

## THE TECHNOLOGY

**THE INVENTION**

23.     AR Design repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

24.     Cathryn MacInnes and Gerald Pearlstein are the inventors of U.S. Patent No. 7,277,572 ("the '572 patent").  *See* Exhibit A.

25.     The '572 patent resulted from the pioneering efforts of Ms. MacInnes and Mr. Pearlstein (hereinafter "the Inventors") in the area of interactive, three-dimensional (3D) interior design systems.  These efforts resulted in the development of a method and apparatus for generating and rendering a photorealistic 3D perspective view of a 3D object (e.g., a piece of furniture, a light, etc.,) that can be selectively positioned and manipulated within a 3D scene, such as a living room in a person's house, in the early 2000s.  At the time of these pioneering efforts, the most widely implemented technology used to try to address the need for a real-time, network-based interactive system for use in visualizing an item in a room prior to placing an order for that item was either limited by its capability of using only two-dimensional (2D) images of the item or, if it had such 3D capability, the 3D item could not be rendered for manipulation within a 3D representation of the room into which the item was to be placed.

26.     Other systems at that time allowed users to import photographs of actual rooms into the program, and then place 3D objects into the room, which could be rotated to fit the scene. However, the room images for such systems were not associated with a 3D model of the room and lacked the capability of rendering objects placed onto floor plans in photographically derived scenes, and/or did not provide for the manipulation of 3D objects at the client computer.

27.     The Inventors conceived of the inventions claimed in the '572 patent as a way to provide an improved 3D design and visualization system that includes an easy-to-use Graphical

User Interface ("GUI"), which is capable of enabling a user to quickly and conveniently generate or import 3D scenes from a server, import and manipulate 3D objects (like furniture or lights) in the scenes in real-time, and render them in photorealistic detail on a client computer.

28.    For example, the Inventors developed a method in a client-server computing environment for generating and rendering a photorealistic 3D perspective view of a 3D object selectively positioned within a 3D scene.  The method includes operating a client application with a GUI and displaying a 3D scene with the GUI.  It also includes configuring the 3D scene for being selectively displayed in a plurality of views; retrieving at least one 3D object (e.g., furniture, light) from a server; importing the 3D object into the 3D scene to generate a composite; and manipulating the 3D object within the composite for placement and orientation.  A 3D image of the composite may be rendered at the client and selectively reconfigured in real-time.  Luminosity characteristics may be applied to the 3D image and a photorealistic 3D view of the composite image may be rendered with the client application, including the luminosity characteristics.

**ADVANTAGE OVER THE PRIOR ART**

29.    The invention disclosed in the '572 patent provides many advantages over the prior art, and in particular improved systems for depicting a realistic 3D rendering of a space with architectural and design elements therein capable of real-time, user-friendly manipulation by a client.  The system may be used by interior designers and architects (or by their clients) to easily design interior spaces with the help of an intuitive and easy to use custom interface.  The resulting design may then be displayed on any number of suitable displays, such as phones, tablets, or computers, to improve customer visualization of proposed designs.  *See* <u>Exhibit A</u> at 6:53-67.[1] One advantage of the patented invention is the easy-to-use GUI that is capable of enabling a user

---

[1]  As used herein, a citation in the form such as "6:53-67" refers to column 6, lines 53-67 of the Asserted Patent.

to quickly and conveniently generate or import 3D scenes, import and manipulate at the client computer 3D objects in the scenes in real-time, and which is capable of rendering them in photorealistic detail on the client computer.  *See* Exhibit A at 4:18-25.

30.     Another advantage of the patented invention is that it provides the ability to represent changes in both natural and artificial light, which may be precise enough to depict lighting and shadowing associated with a particular exposure during a particular season at a predetermined hour of the day at a particular geographic location worldwide.  Advantageously, this ability enables the aesthetics of the conceptualized design to be accurately communicated prior to build-out of the actual room(s).  *See* Exhibit A at 7:12-17.

31.     Because of these significant advantages that can be achieved by the patented invention, the '572 patent presents significant commercial value for companies like Defendant.  Indeed, use of the patented technology has become widespread among members of the public interested in buying furnishings, such as lighting products, including customers of Defendant.  It has become quite popular and advantageous as part of the light buying process for a customer to first utilize the technology offered by Defendant and other light sellers, to import 3D objects (like lighting) from the seller's server and render them in photorealistic detail, including with luminosity effects, within a room setting on the client computer.

TECHNOLOGICAL INNOVATION

32.     The disclosures and claims of the '572 patent resolve technical problems related to computerized three-dimensional modeling systems, particularly problems related to the utilization of technology for rendering and manipulating in real-time 3D objects on a client computer with a user-selected or user-generated interior design scene, as well as editing of those objects to apply lighting and shadow effects called luminosity effects.  As the '572 patent explains, one of the limitations of the prior art as regards such prior art modeling systems was that many of them

generated images in 2D as opposed to 3D, which did not enable them to be shown in context of a background scene, e.g., a particular room, and did not enable them to be manipulated, e.g., for scaling, rotation and particular placement within the background scenes. Some prior art systems did include 3D models, which can be rotated and scaled to fit the scene. However, for example, the room images for such systems were not associated with a 3D model of the room and lacked the capability of rendering objects placed onto floor plans in photographically derived scenes, and/or did not provide for the manipulation of 3D objects at the client computer. *See* Exhibit A at 2:6-64, 3:12-29 and 3:58-4:17.

33.    Moreover, the disclosures and claims of the '572 patent recite inventive concepts that are not merely routine or conventional use of computerized 3D modeling systems and, more particularly, to a software application configured to reside on a client computer that is capable of manipulating 3D object representations in-situ with a user-selected or user-generated interior design scene and rendering quality perspective images of the composite scene. Instead, the claims of the '572 patent are directed to a new and novel solution to specific problems related to improving a software application configured to reside on a client computer, which is capable of manipulated 3D object representations at the client computer with a user-selected or user-generated interior design scene, including selectively reconfiguring a given 3D object in real time and applying luminosity characteristics to the 3D image, thereby rendering quality perspective images of the composite scene.

34.    The claims of the '572 patent does not preempt all the ways that a method in a client-server computing environment for generating and rendering a photorealistic 3D perspective view of a 3D object selectively positioned within a 3D scene may be used to improve computerized 3D modeling systems, nor does the '572 patent preempt any other well-known or prior art technology.

35.     Accordingly, the claims in the '572 patent recite a combination of elements sufficient to ensure that the claims in substance and in practice amount to significantly more than a patent-ineligible abstract idea.

## THE ACCUSED PRODUCTS

36.     AR Design repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

37.     Target is the seventh largest retailer in the U.S. according to the National Retail Federation. *See* Top 100 Retailers 2024 List, NATIONAL RETAIL FEDERATION, https://nrf.com/research-insights/top-retailers/top-100-retailers/top-100-retailers-2024-list (last visited Mar. 11, 2025). Target's 2023 sales was $105.8 billion. *See* Target Corporation 2023 Annual Report, "Form 10-K" at 9, available for download at https://corporate.target.com/getmedia/eba4c76f-a33f-4f4c-9dce-683e907ac4e1/2023-Annual-Report-Target-Corporation.pdf (last visited Mar. 11, 2025).

38.     Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.target.com, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services utilizing infringing systems.

39.     Defendant makes, has made, uses, causes to be used, imports, provides, supplies, distributes, or offers one or more augmented reality ("AR") products and tools, including but not limited to the Live Augmented Reality tool and the "3D model" tool available on Defendant's mobile applications, including, for example, features allowing users to view Target products in their space, as depicted below (hereinafter, "the Accused Products").  *See* **Figures 1–2** (below); *see also* **Exhibit C,** Evidence Of Use Regarding Infringement Of U.S. Patent No. 7,277,572.



**<u>Figure 1</u>**          **<u>Figure 2</u>**

40.    Based upon public information and belief, the Accused Products are available on the Defendant's mobile applications, the "Target app," which users may download from Apple's App Store and Google Play to their mobile devices, including but not limited to the phones, tablets, or computers used by the Defendant's employees and customers. *See* See It in Your Space, TARGET, https://www.target.com/c/see-it-in-your-space/-/N-9ciy7  (last visited Mar. 11, 2025).



2



3

---

<sup>2</sup> *See* https://www.target.com/c/see-it-in-your-space/-/N-9ciy7 (last visited March 13, 2025).

<sup>3</sup> *See* https://www.target.com/c/see-it-in-your-space/-/N-9ciy7 (last visited March 13, 2025).

41.     On information and belief, a significant portion of the operating revenue of Defendant is derived from the Accused Products offered to use from the Target mobile applications on iOS and Android devices.

42.     For example, Target app has over 10 million downloads and about 297,000 reviews on Google Play:



43.     Similarly, the Target app has about 6.1 million reviews on Apple's AppStore:

---

[4] *See* https://play.google.com/store/apps/details?id=com.target.ui (last visited March 13, 2025).



44.     Based upon public information, Defendant, directly through its website and/or through its agents and intermediaries, operates, advertises, and/or controls Target store locations throughout this District, including, at least, in Allen, Denton, Frisco, Longview, McKinney, Plano, Sherman, and Tyler, through which it and/or its agents or employees use, advertise, provide, and/or educate third-parties, including but not limited to customers, about the Accused Products.  *See, e.g.*, Exhibit B.

---

[5] *See* https://apps.apple.com/us/app/target/id297430070 (last visited March 13, 2025).



Download the Target app




6

**COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 7,277,572</u>**

45.    AR Design repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

46.    The United States Patent and Trademark Office duly issued the '572 patent on October 2, 2007, after full and fair examination of application 10/683,825 which was filed on October 10, 2003.  *See* <u>Exhibit A</u> at A-1.  A Certificate of Correction was issued on May 18, 2010.  *See id.* at 51.

47.    The claims of the '572 patent are not directed to an abstract idea.  For example, claim 1 of the '572 patent recites a specific and multi-step method to generate and render a photorealistic 3D perspective view of a 3D object selectively positioned within a 3D scene.  The method enables

---

⁶ *See* https://www.target.com/c/target-app/-/N-4th2r (last visited March 13, 2025).

a user to connect to a server, interact with a graphical user interface ("GUI"), and retrieve and manipulate a 3D image – including applying different luminosity characterizations – that result in a photorealistic 3D view of the composite image, including any luminosity characteristics. Taken as a whole, the claimed inventions of the '572 patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the experience of furnishing an interior space.

48.     The written description of the '572 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

49.     AR Design owns all substantial rights, interest, and title in and to the '572 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers, and to collect damages for all relevant times.

50.     Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '572 patent.

51.     Defendant has infringed the '572 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Products to customers.

52.     The Accused Products include augmented reality (AR) tools available on Target's mobile applications, which are accessible on mobile devices, that perform a method in a client-server computing environment for generating and rendering a photorealistic 3D perspective view of a 3D object selectively positioned within a 3D scene.

53.     The Accused Products perform and supply a method in a client-server computing

environment for generating and rendering a photorealistic 3D perspective view of a 3D object selectively positioned within a 3D scene.

54.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '572 patent as shown in the attached Evidence of Use Chart which is incorporated herewith in its entirety.  *See* Exhibit C.

55.     The method performed and supplied by the Accused Products includes the steps of communicably accessing a server with a client; operating with the client, a client application configured for scene editing and rendering, including a GUI; displaying a 3D scene with the GUI; configuring the 3D scene for being selectively displayed in a plurality of views; retrieving at least one 3D object from the server; importing the 3D object into the 3D scene to generate a composite; manipulating the 3D object within the composite for placement and orientation; rendering a 3D image of the composite at the client; selectively reconfiguring the 3D image in real time; applying luminosity characteristics to the 3D image; and rendering, with the client application, a photorealistic 3D view of the composite image, including the luminosity characteristics. Defendant's infringement in this regard is ongoing.  *See* Exhibit C.

56.     Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.     Since at least the time of receiving this Complaint, Defendant has also indirectly infringed the '572 patent by inducing others to directly infringe the '572 patent.  Defendant has induced end-users, including Defendant's customers, to directly infringe, either literally or under the doctrine of equivalents, the '572 patent by downloading and using the Accused Products.

Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '572 patent, including, for example, claim 1 of the '572 patent.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '572 patent and with the knowledge that the induced acts constitute infringement.  Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '572 patent.  Defendant's inducement is ongoing.

58.    Defendant has also indirectly infringed by contributing to the infringement of the '572 patent.  Defendant has contributed to the direct infringement of the '572 patent by its personnel, contractors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '572 patent, including, for example, claim 1 of the '572 patent. The special features include, for example, the method recited in claim 1, including all the intermediary steps, that allow the claimed method to generate and render a photorealistic 3D perspective view of a 3D object selectively positioned within a 3D scene.  The special features constitute a material part of the invention of one or more of the claims of the '572 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing.

59.    Defendant has had knowledge of the '572 patent at least as of the date when it was

notified of the filing of this action.

60.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

61.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

62.    Defendant's direct and indirect infringement of the '572 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

63.    Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to AR Design in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

64.    AR Design has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  AR Design has and will continue to suffer this harm by virtue of each Defendant's infringement of the '572 patent.  Defendant's actions have interfered with and will interfere with AR Design's ability to license technology.  The balance of hardships favors AR Design's ability to commercialize its own ideas and technology.  The public interest in allowing AR Design to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## **JURY DEMAND**

65.    AR Design hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

66.    AR Design requests that the Court find in its favor and against Defendant, and that the

Court grant AR Design the following relief:

a. Judgment that one or more claims of the Asserted Patents have been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '572 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patent by such entities;

c. Judgment that Defendant account for and pay to AR Design all damages to and costs incurred by AR Design because of its infringing activities and other conduct complained of herein;

d. Judgment that Defendant's infringements be found willful as to the '572 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award AR Design its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>March 13, 2025</u>                    Respectfully submitted,

By:<u>*/s/ C. Matthew Rozier*</u>

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

***Attorneys for Plaintiff AR DESIGN INNOVATIONS LLC***

\* Admitted to the Eastern District of Texas

<u>**List of Exhibits**</u>

A.  U.S. Patent No. 7,277,572

B.  Target Texas Locations

C.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,277,572

<u>Attachments</u>

• Civil Cover Sheet

• Proposed Summons